# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **MANUEL NUNEZ,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:25-cv-556** |
| | § | |
| **ELLIS COUNTY, TEXAS,** | § | |
| **RYAN MASSEY, and** | § | |
| **ETHAN TUPPER,** | § | |
| | § | |
| *Defendants.* | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Manuel Nunez, complaining of Ellis County, Texas, Ryan Massey, and

Ethan Tupper, and for causes of action will respectfully show unto the Court as follows:

> "[A] constitutional violation occurs when an officer tases, strikes, or
> violently slams an arrestee who is not actively resisting arrest."

*Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018).

## SUMMARY

On April 29, 2023, Defendant Jailers Ryan Massey and Ethan Tupper of the Ellis County Sheriff's Office tased Plaintiff Manuel Nunez multiple times as Mr. Nunez was restrained in a restraint chair. These Defendants tased Mr. Nunez for the sole reason being that Mr. Nunez was refusing to give his finger prints. Defendant Tupper tased Mr. Nunez in the right arm while Mr. Nunez was restrained in the restraint chair. Defendant Massey tased Mr. Nunez in the stomach while Mr. Nunez was restrained in the restraint chair. When Defendant Massey tased Mr. Nunez in the stomach, he shocked Mr. Nunez for ten seconds before stopping. These were unnecessary and unreasonable amounts of force used against Mr. Nunez, which were clearly excessive to the need – as Mr. Nunez was restrained in a restraint chair and was not threatening anyone.  Ellis County clearly permits the unconstitutional tasing of people restrained in restraint chairs, as two different Ellis County Jailers tased Mr. Nunez while three to four other Jailers watched and said nothing. Mr. Nunez brings this suit for violations of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from excessive force.



## I.
## PARTIES

1. Plaintiff Manuel Nunez is an individual residing in Clackamas County, Oregon.

2. Defendant Ellis County, Texas is a political subdivision of the State of Texas located in the Northern District of Texas. Ellis County, Texas can be served through its County Judge, Todd Little, at 101 W Main St., Waxahachie, TX 75165, or wherever he may be found.

3. Defendant Ryan Massey is an individual residing in Ellis County, Texas, and is a Jailer with the Ellis County Sheriff's Office and may be served at his place of employment at the Ellis County Sheriff's Office located at 300 S Jackson St, Waxahachie, TX 75165, or wherever he may be found. Defendant Massey is being sued in his individual capacity.

4. Defendant Ethan Tupper is an individual residing in Ellis County, Texas, and is a Jailer with the Ellis County Sheriff's Office, and may be served at his place of employment at the Ellis County Sheriff's Office located at 300 S Jackson St, Waxahachie, TX 75165, or wherever he may be found. Defendant Tupper is being sued in his individual capacity.

## II.
## JURISDICTION AND VENUE

5. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

6. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendants reside in the Northern District of Texas and all of the causes of action accrued in the Northern District of Texas.

## III.
## FACTS AND ALLEGATIONS

7.     On April 29, 2023, around 1:30 AM, Defendant Jailers Ryan Massey and Ethan Tupper of the Ellis County Sheriff's Office tased Plaintiff Manuel Nunez multiple times while Mr. Nunez was restrained in a restraint chair inside of the Ellis County Jail, also known as the Wayne McCollum Detention Center.

8.     That night, Mr. Nunez had been detained for walking in the street, despite there not being a sidewalk on the side of the street where Mr. Nunez was headed.

9.     Mr. Nunez was then arrested and charged with resisting arrest and evading arrest after he attempted to keep walking away from the officer. Notably, Mr. Nunez was not even cited for walking in the street.

10.     These criminal charges were dismissed on January 31, 2025.

11.     When Mr. Nunez was brought into the Ellis County Jail, he was placed into a restraint chair for verbally opposing his arrest.

12.     At no time did Mr. Nunez threaten any officer or jailer.

13.     At no time did Mr. Nunez attempt to fight or assault any officer or jailer.

14.     Mr. Nunez was voicing his displeasure with an arrest that should never have occurred – as demonstrated by the dismissal of his criminal charges; however, he did not present a danger or threat to anyone in the jail.

15.     After placing him in the restraint chair, the jailers told Mr. Nunez they needed to fingerprint him.

16.     Mr. Nunez closed his hands so that his fingerprints could not be taken.

17.     Mr. Nunez stated he would not provide his fingerprints and that he wanted to see an attorney or a judge.

18.     Five Ellis County Jailers were standing around the restraint chair where Mr. Nunez was restrained.

19.     Two of these Ellis County Jailers were Defendant Ryan Massey and Defendant Ethan Tupper.

20.     Two of the Ellis County Jailers attempted to pry open Mr. Nunez's right hand to get his finger prints, while he was restrained in a restraint chair.

21.     The jailers could have simply placed Mr. Nunez in a holding cell until he was willing to provide his fingerprints; however, instead they used physical force against Mr. Nunez, who was not threatening anyone, attempting to flee, or even actively resisting arrest.

22.     Simply holding his hands closed amounted to at most passive resistance.

23.     Defendant Tupper then pulled out his Ellis County issued taser and applied it to Mr. Nunez's right arm.

24.     One of the Ellis County Jailers stated, "Open your hand or you're going to get tased."

25.     None of the Ellis County employees standing around Mr. Nunez voiced opposition to tasing Mr. Nunez.

26.     None of the Ellis County employees standing around Mr. Nunez told Defendant Tupper to put the taser away or not to tase Mr. Nunez.

27.     Defendant Tupper then tased Mr. Nunez in his right arm for three to four seconds while Mr. Nunez was restrained in a restraint chair and simply refusing to open his hand to fingerprint.

28.     Below is a screenshot from body camera footage showing Defendant Tupper tasing Mr. Nunez in the arm as they attempted to pry open his hand to fingerprint him while he is restrained in a restraint chair.



29.     It is clear that the only reason Defendant Tupper tased Mr. Nunez was to get him to fingerprint, as Mr. Nunez had just been told "Open your hand or you're going to get tased."

30.     Mr. Nunez continued to refuse to open his hand to fingerprint.

31.     Mr. Nunez did not fight back or threaten anyone after Defendant Tupper tased him.

32.     Mr. Nunez could not have even done so if he wanted, as he was restrained in the restraint chair.

33.     Then less than thirty seconds later, Defendant Massey pressed his Ellis County issued taser up against Mr. Nunez's stomach and stated, "Open your hand or I'll tase you."

34.     Mr. Nunez was still restrained in the restraint chair.

35.     None of the Ellis County employees standing around Mr. Nunez voiced opposition to tasing Mr. Nunez.

36.     None of the Ellis County employees standing around Mr. Nunez told Defendant Massey to put the taser away or not to tase Mr. Nunez.

37.     Defendant Massey then tased Mr. Nunez in the stomach – while Mr. Nunez was restrained in the restraint chair – for the sole purpose of having Mr. Nunez open his hand for fingerprinting.

38.     Below is a screenshot from body camera footage showing Defendant Massey tasing Mr. Nunez in the stomach while he is restrained in a restraint chair.



39.     The body camera footage in this case shows Defendant Massey tased Mr. Nunez in the stomach for ten seconds – all while Mr. Nunez was restrained in a restraint chair.

40.     It is clear that the only reason Defendant Massey tased Mr. Nunez was to get him to fingerprint, as Defendant Massey had just told him, "Open your hand or I'll tase you."

41.     None of the Ellis County employees attempted to stop Defendant Massey from continuing to tase Mr. Nunez for ten seconds.

42.    When Defendant Tupper tased Mr. Nunez, it caused immense physical pain and emotional suffering as 50,000 volts of electricity surged into his arm for three to four seconds.

43.    When Defendant Massey tased Mr. Nunez, it caused immense physical pain and emotional suffering as 50,000 volts of electricity surged into his stomach for ten seconds.

44.    Sheriff Brad Norman is the sheriff of Ellis County, and was the sheriff of Ellis County at all times relevant to this lawsuit.

45.    As such, Sheriff Norman was responsible for the Ellis County policies, practices, and training for jailers such as Defendants Tupper and Massey in the Ellis County jail.

46.    Defendants Tupper and Massey were acting pursuant to Ellis County policies and practices permitting the use of a taser on individuals restrained in a restraint chair who are not threatening anyone, actively resisting, or attempting to flee.

47.    Defendants Tupper and Massey were acting pursuant to Ellis County policies and practices permitting the use of a taser on individuals for the sole purpose of obtaining their fingerprints.

48.    Ellis County clearly failed to properly and adequately train its employees, including Defendant Tupper, Defendant Massey, and the other three Ellis County jailers present when Mr. Nunez was tased, that it is unconstitutional to use a taser on a person restrained in a restraint chair for the sole purpose of obtaining their fingerprints.

49.    Based off the fact that five Ellis County Jailers – including Defendants Tupper and Massey – believed it was appropriate to tase Mr. Nunez while he was restrained in a restraint chair and for the sole purpose of obtaining his fingerprints, upon information and belief, discovery into information within the knowledge of the County will show that there are more instances of people

being tased while restrained in a restraint chair and for the sole purpose of obtaining their fingerprints.

50.    At all times relevant to this lawsuit, Defendants Tupper and Massey was acting under color of law as jailers for Ellis County, Texas.

**IV.**
**CAUSE OF ACTION**

**Count One**

**Excessive Force**
**Violation of the Fourth and Fourteenth Amendments Pursuant to 42 U.S.C. § 1983**
**Against Defendants Massey and Tupper**

51.    Mr. Nunez repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

52.    Acting under the color of law, Defendants Massey and Tupper each deprived Mr. Nunez of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

53.    Mr. Nunez brings this cause of action pursuant to 42. U.S.C. § 1983.

54.    The amount of force used by each of Defendants Massey and Tupper against Mr. Nunez as described above, specifically but not limited to when Defendant Tupper tased Plaintiff in the arm for three to four seconds despite Plaintiff being restrained in a restraint chair and for the sole purpose of obtaining his fingerprints and when Defendant Massey tased Plaintiff in the stomach for ten seconds despite Plaintiff being restrained in a restraint chair and for the sole purpose of obtaining his fingerprints, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain and suffering upon Plaintiff.

55.     A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

56.     It is clearly established that a constitutional violation occurs when an officer **tases**, strikes, or violently slams **an arrestee who is not actively resisting arrest**. (emphasis added) *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, 731 (5th Cir.). *See, e.g., Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (tasing a restrained, subdued subject in prone position); *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (tasing a subdued subject); *Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012) (tasing a subject who was no longer resisting); *Massey v. Wharton*, 477 F. App'x 256, 263 (5th Cir. 2012) (tasing a subject who was not resisting, was not a threat to the officers or others, and was not attempting to flee); *Autin v. City of Baytown*, 174 F. App'x 183, 186 (5th Cir. 2005) (tasing a subdued subject who was not resisting).

57.     Fifth Circuit case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced. *Id.*

58.     Plaintiff was not suspected of committing a violent or felony offense immediately prior to and at the time when Defendant Tupper or Defendant Massey tased him.

59.     Plaintiff was not threatening any officer or other person immediately prior to and at the time when either Defendant Tupper or Defendant Massey tased him as Plaintiff was restrained in a restraint chair, simply refusing to provide his fingerprints, and both Defendant Tupper and Defendant Massey tased Plaintiff for the sole purpose of obtaining his fingerprints.

60.     Plaintiff was not attempting to evade arrest immediately prior to and at the time when either Defendant Tupper or Defendant Massey tased him as Plaintiff was restrained in a

restraint chair, simply refusing to provide his fingerprints, and both Defendant Tupper and Defendant Massey tased Plaintiff for the sole purpose of obtaining his fingerprints.

61.    Plaintiff was not actively resisting arrest immediately prior to and at the time when either Defendant Tupper or Defendant Massey tased him as Plaintiff was restrained in a restraint chair, simply refusing to provide his fingerprints – which amounted to at most passive resistance, and both Defendant Tupper and Defendant Massey tased Plaintiff for the sole purpose of obtaining his fingerprints.

62.    As evidenced by video of the incident, Plaintiff was not holding a weapon and neither Defendant Tupper or Defendant Massey were aware of any facts that would lead them to believe Plaintiff was armed with a weapon – as Plaintiff was restrained in a restraint chair after being arrested and brought into the jail.

63.    At no point did Mr. Nunez reach toward his waistband or toward a pocket that may have held a weapon, or commit any other act to give either Defendant Tupper or Defendant Massey reason to believe Mr. Nunez was reaching for a weapon – as Mr. Nunez was restrained in a restraint chair.

64.    A reasonable officer would know that the use of force is <u>clearly excessive</u> when engaging with citizens such as Plaintiff, who was not threatening any officer or other person, was not attempting to evade or actively resist arrest, was not holding a weapon, was restrained in a restraint chair, and who the use of force was not warranted.

65.    A reasonable officer would know that the use of force is <u>clearly unreasonable</u> when engaging with citizens such as Plaintiff, who was not threatening any officer or other person, was not attempting to evade or actively resist arrest, was not holding a weapon, was restrained in a restraint chair, and who the use of force was not warranted.

66.    As a direct result of the force used against him by each of Defendants Tupper and Massey, Plaintiff has suffered physical injury, pain, and mental anguish for which he sues herein.

67.    These injuries were not caused by any other means.

68.    When each of Defendants Tupper and Massey used excessive force against Mr. Nunez by tasing him while he was restrained in a restraint chair for the sole purpose of obtaining his fingerprints, Defendants Tupper and Massey was acting under color of law as jailers for Ellis County, Texas.

## Count Two

**PRACTICE AND CUSTOM OF DELIBERATE INDIFFERENCE**
***Monell v. New York City Department of Social Services***
**Violation of the Fourth Amendment**
**Pursuant to 42 U.S.C § 1983**
**Defendant Ellis County, Texas**

69.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

70.    Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008).

71.    A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978).

72.    Municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 690–91)).

73.    "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy;

and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694)).

74.     The plaintiff may demonstrate a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168–69 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984)).

75.     A municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citing *Hicks–Fields*, 860 F.3d at 808)).

76.     To establish municipal liability under § 1983 based on an alleged "persistent widespread practice or custom that is so common it could be said to represent municipal policy, actual or constructive knowledge of such practice or custom must be shown." *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 654 (N.D. Tex. 2018) (citing *Hicks–Fields*, 860 F.3d at 808)).

77.     "Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities…" *Hicks–Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017).

78.     The § 1983 causation component requires that the plaintiff identify, with particularity, the policies or practices they allege cause the constitutional violation, and demonstrate a "direct causal link." *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 255 (5th Cir. 2018); See *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001)). The Fifth Circuit does not, however, require the court to consider each policy or practice in a vacuum. *Id*. The court

may properly consider how individual policies or practices interact with one another within the larger system and how the harmful effects of some policies are exacerbated by others. *Id.*

79.     The Supreme Court has described an actionable *Monell* policy as "a course of action consciously chosen among various alternatives." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985).

### County Policymaker

80.     The identification of policymaking officials is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

81.     Under Texas law, sheriffs are "final policymakers" in the area of law enforcement for the purposes of holding a county liable under § 1983. *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009); citing *Williams v. Kaufman County*, 352 F.3d 994, 1013 (5th Cir.2003).

82.     Sheriff Brad Norman is the sheriff of Ellis County, and was the sheriff of Ellis County at all times relevant to this lawsuit.

83.     Accordingly, Sheriff Norman is and was the final policymaker for Ellis County.

### County's Practice of Tasing People in Restraint Chairs for the Sole Purpose of Obtaining Fingerprints

84.     The County, under the direct supervision of the County's policymaker – Sheriff Norman, maintained, implemented, encouraged, and ratified the following unconstitutional policies and practices, with deliberate indifference to the constitutional violations that they were directly causing and would continue to directly cause, such as the excessive uses of force against Mr. Nunez in this case by Defendants Tupper and Massey:

  a.  Permitting the use of a taser on individuals restrained in a restraint chair who are not threatening anyone, actively resisting, or attempting to flee.

b. Permitting the use of a taser on individuals for the sole purpose of obtaining their fingerprints.

a. Failing to adequately train the County's jailers, including Defendant Tupper, Defendant Massey, and the other three Ellis County jailers present when Mr. Nunez was tased, that it is unconstitutional to use a taser on a person restrained in a restraint chair for the sole purpose of obtaining their fingerprints.

<u>County's Failure to Train Regarding</u>
<u>Use of Taser on Restrained Individuals for the Purpose of Obtaining Fingerprints</u>

85.    To plead a plausible failure-to-train claim, a plaintiff must allege sufficient facts to show: "(1) the training procedures were inadequate; (2) the [county's] policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [the plaintiff's] injury." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

86.    The County's training procedure was inadequate when it came to training the County's jailers that it is unconstitutional to use a taser on a person restrained in a restraint chair for the sole purpose of obtaining their fingerprints.

87.    The County, under the direct supervision of the County's policymaker – Sheriff Norman, maintained, implemented, encouraged, and ratified the unconstitutionally inadequate training regarding the unconstitutional use of a taser on a person restrained in a restraint chair for the sole purpose of obtaining their fingerprints, with deliberate indifference to the constitutional violations that they were directly causing and would continue to directly cause, such as the excessive force used against Mr. Nunez in this case.

**Facts Supporting Claims Against the County**

83.    After placing him in the restraint chair, the jailers told Mr. Nunez they needed to fingerprint him.

84.    Mr. Nunez closed his hands so that his fingerprints could not be taken.

85.    Mr. Nunez stated he would not provide his fingerprints and that he wanted to see an attorney or a judge.

86.    Five Ellis County Jailers were standing around the restraint chair where Mr. Nunez was restrained.

87.    Two of these Ellis County jailers were Defendants Ryan Massey and Ethan Tupper.

88.    Two of the Ellis County Jailers attempted to pry open Mr. Nunez's right hand to get his fingerprints, while he was restrained in a restraint chair.

89.    The jailers could have simply placed Mr. Nunez in a holding cell until he was willing to provide his fingerprints; however, instead they used physical force against Mr. Nunez, who was not threatening anyone, attempting to flee, or even actively resisting arrest.

90.    Simply holding his hands closed amounted to at most passive resistance.

91.    Defendant Tupper then pulled out his Ellis County issued taser and applied it to Mr. Nunez's right arm.

92.    One of the Ellis County jailers said, "Open your hand or you're going to get tased."

93.    **None of the Ellis County employees standing around Mr. Nunez voiced opposition to tasing Mr. Nunez.**

94.    **None of the Ellis County employees standing around Mr. Nunez told Defendant Tupper to put the taser away or not to tase Mr. Nunez.**

95.    Defendant Tupper then tased Mr. Nunez in his right arm for three to four seconds while Mr. Nunez was restrained in a restraint chair and simply refusing to open his hand to fingerprint.

96.    It is clear that the only reason Defendant Tupper tased Mr. Nunez was to get him to fingerprint, as Mr. Nunez had just been told "Open your hand or you're going to get tased."

97.    Mr. Nunez continued to refuse to open his hand to fingerprint.

98.    Mr. Nunez did not fight back or threaten anyone after Defendant Tupper tased him.

99.    Mr. Nunez could not have even done so if he wanted, as he was restrained in the restraint chair.

100.    Then less than thirty seconds later, Defendant Massey pressed his Ellis County issued taser up against Mr. Nunez's stomach and stated, "Open your hand or I'll tase you."

101.    Mr. Nunez was still restrained in the restraint chair.

102.    **None of the Ellis County employees standing around Mr. Nunez voiced opposition to tasing Mr. Nunez.**

103.    **None of the Ellis County employees standing around Mr. Nunez told Defendant Massey to put the taser away or not to tase Mr. Nunez**.

104.    Defendant Massey then tased Mr. Nunez in the stomach, while Mr. Nunez was restrained in the restraint chair, for the sole purpose of having Mr. Nunez open his hand for fingerprinting.

105.    The body camera footage in this case shows Defendant Massey tased Mr. Nunez in the stomach for ten seconds – all while Mr. Nunez was restrained in a restraint chair.

106.    It is clear that the only reason Defendant Massey tased Mr. Nunez was to get him to fingerprint, as Defendant Massey had just told him, "Open your hand or I'll tase you."

**107.     None of the Ellis County employees attempted to stop Defendant Massey from continuing to tase Mr. Nunez for ten seconds.**

**108.     Based off the fact that five Ellis County Jailers believed it was appropriate to tase Mr. Nunez while he was restrained in a restraint chair and for the sole purpose of obtaining his fingerprints, upon information and belief, discovery into information within the knowledge of the County will show that there are more instances of people being tased while restrained in a restraint chair and for the sole purpose of obtaining their fingerprints.**

109.     Mr. Nunez's injuries were not caused by any other means.

## V.
## PUNITIVE DAMAGES

110.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

111.     When viewed objectively from the standpoint of Defendants Tupper and Massey, at the time of the occurrence, Defendant Tupper's conduct and Defendant Massey's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

112.     As a direct, proximate, and producing cause of each of Defendant Tupper's and Defendant Massey's reckless or callous indifference to Mr. Nunez's constitutionally protected rights, Mr. Nunez is entitled to recover punitive damages against Defendant Tupper and Defendant Massey.

## VI
## DAMAGES

113.     Mr. Nunez repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

114. Mr. Nunez's injuries were a foreseeable event. Those injuries were directly and proximately caused by each of Defendant Tupper's and Defendant Massey's uses of excessive and unreasonable force as a result of Ellis County's unconstitutional policies, practices, and training. As a result, Mr. Nunez is entitled to recover all actual damages allowed by law.

115. Mr. Nunez contends the each of Defendant Tupper's and Defendant Massey's uses of force constitute malice, evil intent, or reckless or callous indifference to Mr. Nunez's constitutionally protected rights. Thus, Mr. Nunez is entitled to punitive damages against Defendant Tupper and Defendant Massey.

116. As a direct and proximate result of the occurrence which made the basis of this lawsuit, Mr. Nunez was forced to suffer:

    a. Physical pain and suffering;

    b. Physical injuries;

    c. Emotional distress, torment, and mental anguish, and

    d. Deprivation of liberties.

117. Pursuant to 42 U.S.C. § 1983 and § 1988, Mr. Nunez seeks to recover and requests the award of punitive damages, reasonable attorney's fees, and costs of court.

**VII.**
**ATTORNEY'S FEES**

118. If Mr. Nunez prevails in this action, by settlement or otherwise, Mr. Nunez is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

**VIII.**
**JURY REQUEST**

119. Plaintiff respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Manuel Nunez, prays that judgment be rendered against Defendants for an amount in excess of the jurisdictional minimum of this Court. Mr. Nunez further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721

/s/ Scott H. Palmer
SCOTT H. PALMER,
Texas Bar No. 00797196

/s/ Breanta Boss
BREANTA BOSS,
Texas Bar No. 24115768

PALMER PERLSTEIN
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
james@palmerperlstein.com
scott@palmerperlstein.com
breanta@palmerperlstein.com

**COUNSEL FOR PLAINTIFF**