IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MANUEL NUNEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-556-K |
| | § | |
| ELLIS COUNTY, TEXAS, RYAN | § | |
| MASSEY, and ETHAN TUPPER, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Ryan Massey and Ethan Tupper's Motion for Summary Judgment (Doc. No. 16) and Brief in Support (Doc. No. 17) (together, the "Motion"), Plaintiff Manuel Nunez's Response to Defendants Ryan Massey and Ethan Tupper's Motion (Doc. No. 22) and Brief in Support (Doc. No. 23) (together, the "Response"), and Defendants' Reply Brief in Further Support of the Motion (the "Reply") (Doc. No. 27). The Court has carefully considered the Motion, the Response, the Reply, the supporting exhibits, the applicable law, and the relevant portions of the record. Because Plaintiff does not satisfy his burden to overcome the qualified immunity defense asserted by Defendants Ryan Massey and Ethan Tupper, the Court **GRANTS** the Motion and **DISMISSES WITH PREJUDICE** Plaintiff's claims against Defendants Ryan Massey and Ethan Tupper.

## I.     Factual Background

In the early morning hours of April 29, 2023, Waxahachie police officers (not

the present Defendants) arrested Plaintiff Manuel Nunez for resisting arrest, search, or transport in violation of Texas Penal Code § 38.03 and for evading arrest or detention in violation of Texas Penal Code § 38.04. Doc. No. 18-1 at 11 (Appendix to Defendant Massey and Tupper's Motion) & Doc. No. 23 at 9 (citing same) (all citations to CM/ECF assigned page number unless otherwise noted). These charges were later dismissed. Doc. No. 23 at 9.

After the arrest, the police transported Plaintiff to Ellis County Jail. Doc. No. 17 at 8 (citing Doc. No. 18-1 at 6) & Doc. No. 23 at 9 (citing Plaintiff's Appendix in Support of Response (Doc. No. 24 at 5)). After "verbally opposing his arrest," Ellis County Jail officers placed Plaintiff in a restraint chair so that they could obtain Plaintiff's fingerprints. Doc. No. 17 at 9 (citing Doc. No. 18-4 at 2) & Doc. No. 23 at 9 (citing Doc. No. 24 at 5). While the parties dispute the events that occurred after Ellis County Jail officers placed Plaintiff in a restraint chair, it is undisputed that Plaintiff refused to open his hands so that the officers could obtain his fingerprints. *See* Doc. No. 17 at 9 (citing Doc. No. 18-3 at 2) & Doc. No. 23 at 9 (citing Doc. No. 18-2). Five Ellis County Jail officers attended to Plaintiff, including Defendants Massey and Tupper. Doc. No. 23 at 9 (citing Doc. Nos. 18-2, 18-3 at 2, & 18-4 at 2). The officers attempted to manually open Plaintiff's right hand so that they could obtain his fingerprints, but these efforts failed. *See* Doc. No. 17 at 9 (citing Doc. No. 18-3 at 2) & Doc. No. 23 at 9 (citing Doc. No. 18-2).

After unsuccessful attempts to manually open Plaintiff's hands, Defendant

2

Tupper warned Plaintiff that if he did not open his hand, Defendant Tupper would use his taser on Plaintiff. *See* Doc. No. 17 at 9 (citing Doc. No. 18-2) & Doc. No. 23 at 10 (citing Doc. No. 18-2). After Plaintiff continued to refuse to open his hand, Defendant Tupper tased Plaintiff's right arm for approximately three seconds. Doc. No. 17 at 9 (citing Doc. No. 18-3 at 2) & Doc. No. 23 at 10 (citing Doc. No. 18-2). Defendant Tupper's taser did not get Plaintiff to open his hand, so Defendant Massey then warned Plaintiff that he would use his taser if Plaintiff did not open his right hand. Doc. No. 17 at 9 (citing Doc. No. 18-2) & Doc. No. 23 at 11 (citing Doc. No. 18-2). Plaintiff still did not open his hand, so Defendant Massey tased Plaintiff in his stomach. Doc. No. 17 at 9 (citing Doc. No. 18-3 at 2) & Doc. No. 23 at 11–12 (citing Doc. No. 18-2 & Doc. No. 24 at 4).

Plaintiff later filed his Original Complaint (Doc. No. 1), alleging a claim against Defendants Massey and Tupper for excessive force under 42 U.S.C. § 1983. *See* Doc. No. 1 at 9–12. Plaintiff also asserts a *Monell* claim under § 1983 against Defendant Ellis County, Texas, which is not at issue in the present Motion. *See id.* at 12–18. Defendants Massey and Tupper now move for summary judgment on Plaintiff's excessive force claim, asserting the defense of qualified immunity. *See* Doc. No. 17 at 6. Plaintiff filed his Response and Defendants filed their Reply. Therefore, the Motion is now ripe for determination.

3

II.    **Legal Standards & Applicable Law**

A.    **Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

When a party bears the burden of proof on the issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may obtain summary judgment by (1) submitting evidence that negates the existence of one or more essential elements of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support one or more essential elements of the nonmovant's claim or affirmative defense. *Celotex,* 477 U.S. at 323–25. Once the movant satisfies his burden, the nonmovant may not rest on the pleadings, but must present competent summary

judgment evidence showing that a genuine fact dispute for trial exists. *Id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence cannot defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249–52; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). If the nonmovant fails to make a sufficient showing to prove the existence of an essential element to the case and on which the nonmovant will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322. The court views the evidence in the light most favorable to the nonmovant, but the nonmovant must still "come forward with specific facts indicating a genuine [dispute] for trial." *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001) (citing *Celotex*, 477 U.S. at 324).

### B.   Qualified Immunity

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2017) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017). To defeat a qualified

immunity defense, the plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *McLin v. Ard,* 866 F.3d 682, 689 (5th Cir. 2017). "To avoid summary judgment on qualified immunity, 'the plaintiff need not present absolute proof, but must offer more than mere allegations.'" *Melton,* 875 F.3d at 261 (quoting *King v. Handorf,* 821 F.3d 650, 654 (5th Cir. 2016)). The Court construes all facts and inferences in the light most favorable to the nonmovant. *Id.* at 261.

Regarding the second prong of the qualified immunity defense, an official's alleged misconduct violates "clearly established" law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). A plaintiff does not have to provide "directly on point" authority, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 741. To find that the constitutional right was clearly established at the time of the challenged conduct, the court "must be able to point to controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Morgan,* 659 F.3d at 371–72. Further, this inquiry is based on the "objective legal reasonableness of the action, *assessed in light of the legal rules that were clearly established at the time it was taken.*" *Pearson v. Callahan,* 555 U.S. 223, 244 (2009) (quoting *Wilson v. Layne,* 526 U.S. 603, 614

6

(1999)) (emphasis added). The asserted right must be clearly established in a "particularized" way, such that the illegality of the challenged conduct, in light of pre-existing precedent, was apparent at the time of the conduct. *Anderson*, 483 U.S. at 640. Importantly, the court, in its discretion, may "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

### C.    Excessive Force

The Fourth Amendment guarantees the right to be free from unreasonable seizures, which includes the use of excessive or unreasonable force by a law enforcement officer during an arrest, an investigatory stop, or other "seizure." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Roque v. Harvel*, 993 F.3d 325, 332 (5th Cir. 2021). An excessive force claim requires the plaintiff to show "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Roque*, 993 F.3d at 332–33. The reasonableness of an officer's use of force is to be "judged from the perspective of a reasonable police officer on the scene, rather than the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *accord Roque*, 993 F.3d at 333. This reasonableness standard demands "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1163 (5th Cir. 2021) (internal quotations omitted) (quoting *Graham*, 490

U.S. at 396–97). However, the reasonable inquiry is objective as the officer's actions are judged "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397.

In analyzing a plaintiff's excessive force claim, the court considers several factors in determining whether the force was "unreasonable or excessive," including "the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Harmon*, 16 F.4th at 1163 (quoting *Graham*, 490 U.S. at 396).

### III.   Analysis

In their Motion, Defendants Massey and Tupper argue that they are entitled to qualified immunity from Plaintiff's excessive force claim. *See* Doc. No. 17 at 12. Specifically, Defendants Massey and Tupper argue that the use of their tasers on Plaintiff "was neither excessive nor unreasonable given the way Plaintiff was acting and resisting[]" because Plaintiff was resistant and "combative," he refused to open his hands for fingerprinting, and Defendants Massey and Tupper warned Plaintiff that he would be tased if he continued his non-compliance with their orders. *Id.* at 14. Defendants Massey and Tupper argue that their "use of the taser was measured and ascending in accordance with Plaintiff's resistance and belligerence." *Id.* at 16. Further, Defendants Massey and Tupper argue that their actions did not violate clearly established law existing at the time of the challenged conduct. *See id.*

Defendants Massey and Tupper submit the following video and documentary

evidence in support of their Motion: (1) police and incident report for Plaintiff, including statements from the arresting officers and charges against Plaintiff (Doc. No. 18-1); video of the incident at the Ellis County Jail (referenced at Doc. No. 18-2); Defendant Massey's sworn declaration (Doc. No. 18-3); Defendant Tupper's sworn declaration (Doc. No. 18-4); and the Declaration of Terry Ogden (Doc. No. 18-5).

In his Response, Plaintiff argues that Defendants Massey and Tupper "used force that was excessive and clearly unreasonable when they tased [Plaintiff] while he was restrained in a restraint chair, not combative, not a threat, and for the sole purpose of opening his hand to fingerprint him." Doc. No. 23 at 17. Specifically, Plaintiff argues that the use of tasers against him was excessive because he was arrested for a non-violent offense, he was not attempting to flee or resist, and he was not a threat to Defendants Massey, Tupper, or any of the other jail officers. *Id.* at 17–18. Plaintiff also argues that the challenged conduct violated clearly established law. *Id.* at 20.

Plaintiff submits the following video evidence in support of his Response: (1) body camera footage from Officer Harrison "Drew" Pickens beginning at 1:32 A.M. (referenced as "Exhibit A" at Doc. No. 24 at 4); and (2) body camera footage from Officer Pickens beginning at 12:58 A.M. (referenced as "Exhibit B" at Doc. No. 24 at 5) (together, the "Pickens Footage").

In their Reply, Defendants Massey and Tupper object to the Pickens Footage as not properly authenticated and "confusing at best and misleading at worse." Doc. No. 27 at 1. Further, Defendants Massey and Tupper argue that they used the minimum

amount of force necessary to gain Plaintiff's compliance and that Plaintiff "fails to cite a single case where the use of force is used on an individual who continues to physically resist officers' commands once in custody." *Id.* at 2.

### A.    Defendants' Objections to Plaintiff's Summary Judgment Evidence

In their Reply brief, Defendants Massey and Tupper object to the Pickens Footage that Plaintiff submits in support of his Response, arguing that the Pickens Footage is not competent summary judgment evidence. *Id.* Specifically, Defendants Massey and Tupper argue that the Pickens Footage lacks authentication. *See id.* at 1. Plaintiff did not file a response to these objections.

Under Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). "At the summary judgment stage, evidence relied upon need not be presented in admissible form, but it must be *capable* of being presented in a form that would be admissible in evidence." *Truman Prop. Owner, LLC v. Arlington Commons II, LLC*, Civ. Action No. 4:23-CV-629-Y, 2024 WL 4426189, at *1 (N.D. Tex. June 12, 2024) (Means, J.) (quoting *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018) (emphasis original) (internal quotations omitted). If this case proceeded to trial, Plaintiff could put on witness testimony to authenticate the Pickens Footage, so the Court finds that the Pickens Footage is capable of being presented in admissible form. *See id.* Therefore, the Court **OVERRULES** Defendants Massey and Tupper's objections to the Pickens Footage.

### B.    Clearly Established Law

At the center of Plaintiff's argument against summary judgment is his conclusion that the act of holding his hands closed and refusing to submit to fingerprinting "amounted to at most *passive* resistance." Doc. No. 23 at 10 (emphasis added). In contrast, Defendants argue that while Plaintiff was in the restraint chair in the Ellis County Jail, he physically resisted the jail officers' attempts to obtain his fingerprints. *See* Doc. No. 17 at 9. As the Court has already noted, it may "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. In light of the issues presented in the present summary judgment briefing, the Court will first address the *second* prong of the qualified immunity analysis, that being whether Defendants Massey and Tupper's alleged misconduct violated "clearly established" law. *See Anderson*, 483 U.S. at 640 (emphasis added). Having viewed the evidence and all reasonable inferences in the light most favorable to Plaintiff and resolving all disputed facts in favor of Plaintiff, the Court finds that Defendants Massey and Tupper's alleged misconduct was not a "clearly established" violation of Plaintiff's rights.

An important consideration in any excessive force case is whether the plaintiff "actively resist[ed] arrest." *Harmon*, 16 F.4th at 1163 (quoting *Graham*, 490 U.S. at 396). In determining the need for use of force, an officer must assess "the relationship between the need and the amount of force used." *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017) (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009))

(internal quotations omitted). Further, an officer's use of force must be "measured and ascending" in response to an arrestee's escalation of his resistance. *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (internal quotations omitted). Plaintiff argues that his refusal to open his hands for fingerprinting was mere passive resistance. *See* Doc. No. 23 at 10. When a person's conduct is only "mere passive resistance," an officer's use of force on that person is generally unjustified. *Trammell*, 868 F.3d at 341. However, even when an individual only offers passive resistance, the use of force is not necessarily unjustified, but "the amount of reasonable force varies." *Robles v. Ciarletta*, 797 Fed. App'x. 821, 827–28 (5th Cir. 2019) (providing additional context to *Trammell*).

The line between passive and active resistance is "unclear." *Trammell*, 868 F.3d at 341; *see also Betts v. Brennan*, 22 F.4th 577, 583 (5th Cir. 2022) ("the line between active and passive resistance is sometimes hazy"). In some cases, an individual actively resists arrest or an officer's orders such that the use of force is not excessive. *See Buchanan v. Gulfport Police Dep't*, 530 Fed. App'x. 307, 314 (5th Cir. 2013) (officer's use of his taser was not excessive when plaintiff failed to comply with officer's order); *Pratt v. Harris Cnty., Tex.*, 822 F.3d 174, 182 (5th Cir. 2016) ("[o]nly after [plaintiff] continuously failed to comply, did either deputy deploy tasers"); *Betts*, 22 F.4th at 583 (active resistance where plaintiff "adopted a confrontational stance," "repeatedly contested why he was stopped," "ignored dozens of [the officer's] commands," and "batted away [the officer's] hand"). In other cases, a plaintiff only offers passive

resistance such that the use of force is excessive. *See Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir. 2013) (fact question as to excessive force found where plaintiff only resisted the officer by "pulling his arm out of [the officer's] grasp"); *Deville*, 567 F.3d at 169 (fact question as to excessive force found where plaintiff only offered "passive resistance to being removed from her car and separated from her grandchild"); *Cloud v. Stone*, 993 F.3d 379, 385 (5th Cir. 2021) (citing *Newman v. Guedry*, 703 F.3d 757, 762–63 (5th Cir. 2012)) ("we held that officers could not tase someone who had not committed a crime, attempted flight, or disobeyed any commands, and who may have only provoked police with an 'off-color joke'"). In all, an excessive force analysis, particularly the line between passive and active resistance, is "fact-intensive." *Betts*, 22 F.4th at 583 (quoting *Deville*, 567 F.3d at 167) (internal quotations omitted).

Additional considerations are insightful to the present Motion. First, officers "may consider a suspect's *refusal to comply* with instructions" in determining whether physical force is necessary to obtain compliance. *Deville*, 567 F.3d at 167 (emphasis added); *see also Buchanan*, 530 Fed. App'x. at 314 ("where a suspect resists arrest or fails to follow police orders, officers do not violate his right against excessive force by deploying their tasers to subdue him"). Further, an officer's use of "physical skill" and "negotiation" before resorting to using his taser is evidence that his use of force was reasonable under the circumstances. *Betts*, 22 F.4th at 583 (quoting *Newman*, 703 F.3d at 763); *see also Trammell*, 868 F.3d at 342 ("this Court has several times found that the speed with which an officer resorts to force is relevant in determining whether that

force was excessive to the need"). Indeed, the use of force is excessive where an officer uses his taser as "the first indication" that the arrestee is non-compliant with the officer's orders. *Autin v. City of Baytown*, 174 Fed. App'x. 183, 185 (5th Cir. 2005). Importantly, an officer that stops using force once compliance is obtained provides evidence of a "reasonable relationship between the need [for force] and the amount of force used." *Betts*, 22 F.4th at 584 (quoting *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020)) (internal quotations omitted).

In light of the foregoing precedent, which existed at the time of Defendants Massey and Tupper's alleged misconduct, the Court finds that the challenged conduct was not a violation of then-clearly established law. Plaintiff does not dispute that the jail officers, including Defendants Massey and Tupper, attempted to manually open his right hand in order to obtain his fingerprints, including through the use of pressure points. *See* Doc. No. 17 at 9 (citing Doc. No. 18-3 at 2); Doc. No. 23 at 9 (citing Doc. No. 18-2) ("[t]wo [j]ailers attempted to *pry open* [Plaintiff's] right hand to get his fingerprints"). After Plaintiff continued his non-compliance, Defendant Tupper pulled out his taser and warned Plaintiff that he would get tased if he did not comply. Doc. No. 23 at 10 (citing Doc. No. 18-2); *Betts*, 22 F.4th at 583 (physical skill and negotiation prior to tasing is evidence of reasonable use of force). Once Plaintiff maintained his non-compliance, Defendant Tupper tased him. Doc. No. 23 at 10 (citing Doc. No. 18-2); *Deville*, 567 F.3d at 167 ("refusal to comply" is a valid consideration in determining whether to use force). Plaintiff still refused to comply, so

14

Defendant Massey pulled out his taser and issued another warning to Plaintiff. Doc. No. 23 at 11 (citing Doc. No. 18-2). When Plaintiff still did not comply, Defendant Massey tased him. *See id.* After Defendant Massey's use of force, Plaintiff opened his hands for fingerprinting. *See* Doc. No. 17 at 9–10 (citing Doc. No. 18-3 at 2). Plaintiff also does not dispute that once he opened his hands for fingerprinting, none of the jail officers, including Defendants Massey and Tupper, deployed their tasers any further. *See id.*; *Betts*, 22 F.4th at 584 (stopping use of force once compliance is obtained shows "reasonable relationship" between need for force and amount of force used).

It is clear to the Court that at the time of Defendants Massey and Tupper's alleged misconduct, existing precedent was not "sufficiently clear that every reasonable [officer] would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Plaintiff refused to comply with the jail officers' orders to open his hands for fingerprinting. Defendants Massey and Tupper attempted to use other methods of obtaining Plaintiff's compliance and only resorted to their tasers when Plaintiff continued to refuse to comply with their orders. After finally obtaining Plaintiff's compliance, they did not deploy their tasers any further. These are all facts that then-existing precedent showed were persuasive in finding the use of force *reasonable*. *See Deville*, 567 F.3d at 167; *Buchanan*, 530 Fed. App'x. at 314; *Betts*, 22 F.4th at 583, 584 (emphasis added). The Court sees nothing in then-existing precedent, much less a "robust consensus of persuasive authority," that clearly established a violation of law in this case. *Morgan*, 659 F.3d at 371–72. Further,

the Court acknowledges that Plaintiff provides a set of cases in support of his argument that Defendants Massey and Tupper violated his clearly established rights. *See* Doc. No. 23 at 21–23. The Court has carefully reviewed each of Plaintiff's proffered cases and finds that they are each easily distinguishable from the facts of this case and are thus unpersuasive.

Having viewed the evidence and all reasonable inferences in the light most favorable to Plaintiff and resolving all disputed facts in favor of Plaintiff, the Court finds that Defendants Massey and Tupper's alleged misconduct was not a "clearly established" violation of Plaintiff's Fourth Amendment rights. Because Plaintiff does not satisfy this prong of the qualified immunity analysis, the Court need not discuss the other prong. *See Bernabe v. Rosenbaum*, 2023 WL 181099, at *1 (5th Cir. Jan. 13, 2023) ("both prongs must be satisfied, and courts may choose which prong to consider first").

### C.    Plaintiff's Fourteenth Amendment Claim

Plaintiff also alleges his excessive force claim as a violation of his Fourteenth Amendment rights. *See* Doc. No. 1 at 9. However, "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395 (emphasis original). Accordingly, Plaintiff's asserted ground for relief under the Fourteenth Amendment is not proper in

16

this case. Therefore, the Court finds that Defendants Massey and Tupper are entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.

## IV.    Conclusion

Having viewed the evidence and all reasonable inferences in the light most favorable to Plaintiff and resolving all disputed facts in favor of Plaintiff, the Court finds that Plaintiff fails to satisfy his summary judgment burden to overcome the defense of qualified immunity. Accordingly, the Court **GRANTS** the Motion and **DISMISSES WITH PREJUDICE** Plaintiff's claims against Defendants Ryan Massey and Ethan Tupper.

**SO ORDERED.**

Signed March 26th, 2026.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE